**KELLEY DRYE & WARREN LLP**
Lauri A. Mazzuchetti (*pro hac vice* forthcoming)
Whitney M. Smith (*pro hac vice*)
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Telephone: (973) 503-5900
Facsimile: (973) 503-5950
lmazzuchetti@kelleydrye.com
wsmith@kelleydrye.com

**KELLEY DRYE & WARREN LLP**
Rebecca B. Durrant (SBN 350444)
888 Prospect Street, Suite 200
La Jolla, CA 92037
Telephone: (212) 808-7551
Facsimile: (213) 547-4901
rdurrant@kelleydrye.com

*Counsel for Defendants CVS Health Corporation and CVS Pharmacy, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ARIEL BROOKS** and **NORA BOROWSKY,** individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**CVS HEALTH CORPORATION** and **CVS PHARMACY, INC.**,<br><br>Defendants. | Case No. 3:24-cv-08990-AMO<br><br>[Assigned to Hon. Araceli Martínez-Olguín]<br><br>**DEFENDANTS' NOTICE OF MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>[Declarations of Sheila Bowe and Whitney M. Smith and Proposed Order filed concurrently]<br><br>Hearing: Thursday, September 11, 2025<br>Time: 2:00 p.m.<br>Location: Courtroom 10 |

# TABLE OF CONTENTS


Page

I. INTRODUCTION .... 1

II. BACKGROUND .... 2

A. CVS .... 2

B. The Plaintiffs .... 3

C. The Complaint .... 5

D. The Account Creation Process .... 6

E. CVS's Terms of Use and Privacy Policy .... 7

F. Disclosures Regarding the CVS App .... 9

III. MOTION TO DISMISS .... 10

A. Legal Standard Pursuant to Rule 12(b)(1) .... 10

B. CIPA Claims Require Plaintiffs to Show Harm .... 11

1. Plaintiffs' Continued Interactions with the CVS App Demonstrate They Suffered No Injury .... 12

2. Plaintiffs Were Informed of the Presence of Third-Party Technology .... 13

3. Plaintiffs' Privacy Interests Were Not Violated When There Is No Third Party Eavesdropper .... 15

4. Plaintiffs Allege Only Speculative Harm That Is Insufficient to Confer Article III Standing .... 15

IV. CVS RESERVES THE RIGHT TO SEEK TO COMPEL ARBITRATION .... 16

V. CONCLUSION .... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Antman v. Uber Techs., Inc.*,
No. 3:15-cv-01175, 2018 WL 2151231 (N.D. Cal. May 10, 2018) ........ 15

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2023) ........ 15

*Daghaly v. Bloomingdales.com, LLC*,
No. 23-4122, 2024 WL 5134350 (9th Cir. Dec. 17, 2024) ........ 11

*Gabrielli v. Insider, Inc.*,
1:24-cv-01566, 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) ........ 12

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ........ 14

*Golden State Foods, Corp. v. Mendoza*,
No. 2:14-cv-07045, 2014 WL 12589654 (C.D. Cal. Nov. 4, 2014) ........ 16

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........ 15

*Greenstein v. Noblr Reciprocal Exch.*,
585 F. Supp. 3d 1220 (N.D. Cal. 2022) ........ 15

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) ........ 13

*Ensambles Hyson, S.A. de C.V. v. Sanchez*,
718 F. Supp. 3d 1258 (S.D. Cal. 2024) ........ 17

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ........ 11, 15

*Lake Commc'ns, Inc. v. ICC Corp.*,
738 F.2d 1473 (9th Cir. 1984) ........ 17

*Lakes v. Ubisoft*,
No. 3:24-cv-06943, 2025 WL 1036639 (N.D. Cal. Apr. 2, 2025) ........ 14

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) ........ 16

*Lien v. Talkdesk, Inc.*,
No. 3:24-cv-06467, 2025 WL 551664 (N.D. Cal. Feb. 19, 2025) ........ 12

*Martin v. Yasuda*,
829 F.3d 1118 (9th Cir. 2016) .......... 17

*Massie v. Gen. Motors LLC*,
No. 1:21-cv-00787, 2022 WL 534468 (D. Del. Feb. 17, 2022) .......... 11

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) .......... 10

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 11

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2023) .......... 13

*Purnell v. GoodLeap, LLC*,
No. 2:22-cv-02773, 2023 WL 2761131 (E.D. Pa. Mar. 31, 2023) .......... 20

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .......... 10

*Samsung Elecs. Am., Inc. v. Ramirez*,
No. 1:17-cv-01462, 2018 WL 2198721 (E.D. Cal. May 14, 2018) .......... 16

*Scott v. Breeland*,
792 F.2d 925 (9th Cir. 1986) .......... 10

*Silver v. Stripe Inc.*,
No. 4:20-cv-08196, 2021 WL 3191752 (N.D. Cal. July 28, 2021) .......... 14

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 11

*Sunbelt Rentals, Inc. v. Victor*,
43 F. Supp. 3d 1026 (N.D. Cal. 2014) .......... 13

*Thomasson v. GC Servs. Ltd. P'Ship*,
321 F. App'x 557 (9th Cir. 2008) .......... 15

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 11, 15

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) .......... 10

**Statutes**

Cal. Penal Code § 631(a) .......... 5

Cal. Penal Code § 632 .......... 5

Cal. Penal Code § 637.2 .......... 12

Cal. Civ. Code § 1798.100 .......... 16

**Other Authorities**

Cal. Code Regs. Tit. 11, § 7051 .......... 20

45 C.F.R. § 160 .......... 3

45 C.F.R. § 164 .......... 3

Fed. R. Civ. P. 12(b)(1) .......... 1, 10

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on Thursday, September 11, 2025 at 2:00 p.m., or as soon as the matter can be heard before the Honorable Araceli Martínez-Olguín in Courtroom 10 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants CVS Health Corporation and CVS Pharmacy, Inc. (collectively, "CVS" or "Defendants") will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(1), for an Order dismissing the Complaint and claims therein of Plaintiffs Ariel Brooks and Nora Borowsky.

Defendants move to dismiss Plaintiffs' Complaint because the Court lacks subject matter jurisdiction, based upon the absence of any injury by Plaintiffs sufficient to maintain standing under Article III. This Motion is based on this notice of motion, the accompanying memorandum of points and authorities in support of this motion, all pleadings filed with this Court, any Reply filed in support, and any oral argument that may be presented at the hearing.

## MEMORANDUM

## I. INTRODUCTION

This action ("Action") arises out of claims asserted by plaintiffs Ariel Brooks and Nora Borowsky ("Plaintiffs") under the California Invasion of Privacy Act ("CIPA") against defendants CVS Health Corporation[1] and CVS Pharmacy, Inc. (together, "CVS" or "Defendants"). Plaintiffs' claims are predicated upon their alleged use of the mobile application offered by CVS ("CVS App"). Specifically, Plaintiffs allege that CVS violated CIPA based upon its purported use of technology provided by a third-party Quantum Metric, Inc. ("QM"), which Plaintiffs claim trigger the protections of CIPA's wiretapping and recording provisions.

While CVS maintains that Plaintiffs' claims are without merit both legally and factually, the instant motion focuses upon procedural issues in the first instance. Specifically, CVS seeks dismissal of the Action based upon Plaintiffs' failure to establish any concrete injury sufficient to confer Article III standing, as required to maintain an action in federal court.

---

[1] CVS Health Corporation is a holding company that is improperly named herein.

Plaintiffs apparently seek to differentiate this Action from the hundreds of other CIPA actions that have flooded California courts over the last three years, by alleging that their prescription drug information was intercepted by QM. This effort, however, fails because Plaintiffs' allegation of harm is theoretical and speculative—exactly the type of injury that the Supreme Court held in *TransUnion v. Ramirez* will *not* qualify for Article III standing. Moreover, Plaintiffs' own conduct belies any claim of injury, including because they continued to use the CVS App following the commencement of this Action, including, in at least one instance, to refill prescription drugs. As a result of these continued interactions with CVS—both before and after they filed the Action, Plaintiffs were repeatedly confronted with disclosures regarding the very conduct that forms the basis of their CIPA claims. Moreover, any use of QM's technology was protected, at all times, by contractual safeguards that limit QM's use of any information provided by users of the CVS App. Accordingly, Plaintiffs cannot establish the requisite injury required to establish standing here.

In light of the customer relationships that Plaintiffs have with CVS, even if this Court concludes that Plaintiffs have demonstrated sufficient injury for purposes of standing (which they have not), Plaintiffs still may not be permitted to proceed with this Action in this forum. That is because Plaintiffs, as a result of their multiple touchpoints with CVS, have likely agreed to arbitrate any disputes with CVS—not to resolve them in litigation, as they seek to do in this Action. With respect to Ms. Borowsky, she previously invoked the arbitration agreement with CVS to resolve a privacy-related dispute. Because this Court must first satisfy itself of its own jurisdiction, however, before addressing whether there is a basis to compel arbitration, CVS reserves its right to seek to enforce any arbitration agreement with Plaintiffs and to conduct limited discovery in connection with such a motion.

## II. <u>BACKGROUND</u>

### A. CVS

CVS is a leading health solutions company building a world of health around every consumer it serves and creating accessible care for people wherever they are. (Declaration of Sheila Bowe ("Bowe Decl.") ¶ 4.) CVS responsibly collects information from and about individuals who engage with its websites and mobile applications, including the CVS App. (*Id.* ¶ 5.) CVS regards certain

information to be Personal Health Information ("PHI") if it is received during individuals' interactions offering access to services or products that are subject to the Healthcare Insurance Portability and Accountability Act ("HIPAA"). (*Id.* ¶ 6.) To the extent that CVS discloses PHI that is collected from and about individuals during their interactions with its websites and mobile applications to a third-party developer or provider of technology, CVS enters into a business associate agreement ("BAA") with the provider of technology. (*Id.* ¶ 7.) This ensures that PHI is protected in accordance with HIPAA. 45 C.F.R. §164.504(e). The purposes for which CVS may disclose PHI to a third party, including a provider of technology, are set forth in the HIPAA Privacy Rule and described in CVS's privacy policy ("Privacy Policy"), and other terms that specifically address interactions with the pharmacy. 45 C.F.R §§ 164.500–164.535; (*see* Bowe Decl., Exhibit ("Ex.") J.)

CVS has engaged QM to act as a "business associate" as defined by 45 C.F.R. § 160.103. (*see id.* ¶ 8.) QM's status in this regard is memorialized in a BAA executed on or about March 24, 2020. (*Id.*) Pursuant to that BAA, QM "may not de-identify PHI except as necessary to provide its services as described [in the BAA]. [QM] is prohibited from using or disclosing such de-identified information for its own purpose without the explicit written permission of CVS." (Bowe Decl., Ex., A ¶ 4(b).)

**B. The Plaintiffs**

***Ariel Brooks.*** CVS's records reflect that Ms. Brooks is a long-standing customer of CVS. (Bowe Decl. ¶ 10.) Specifically, these records indicate that Ms. Brooks has multiple customer relationships with CVS, including as a (i) CVS ExtraCare ("EC") member starting in or around December 2016, (ii) CVS.com account ("CVS.com Account") holder in or around March 2023, (iii) an ExtraCare Plus ("EC Plus") member starting in or around April 2023, and (iv) a Pharmacy & Health Rewards ("PHR") member in or around November 2023. (*Id.*) These relationships are confirmed by Ms. Brooks's allegations, where she claims that, with respect to the interactions that purportedly give rise to her claims, she was "signed in" to her account at all times relevant to the conduct giving rise to the Complaint. (Complaint ("Compl."), ECF No. 1, ¶¶ 3–4, 50–51, 65.) Ms. Brooks further alleges that, while signed into her account, she "used the [CVS App on her Android

device] to browse over-the-counter medications, and refill her prescription medications" in or about October 2024. (*Id.* ¶ 4.) Ms. Brooks further alleges that she "has been accessing her account on the [CVS App] since at least February 2024." (*Id.*)

CVS's records indicate that Ms. Brooks made three pharmacy delivery requests through digital means on approximately January 5, 2024, April 3, 2024, and August 17, 2024. (Bowe Decl. ¶ 14.) CVS's records further reflect that Ms. Brooks logged into the CVS App on November 28, 2024 and December 10, 2024. (*Id.* ¶ 15.) Since filing the Complaint on December 12, 2024, Ms. Brooks has continued to log into the CVS App on, at least, January 20, 2025, and twice on February 6, 2025. (*Id.* ¶ 16.) Additionally, Ms. Brooks placed a prescription order through the CVS App on or about January 25, 2025, *i.e.*, after she filed this Complaint. (*Id.*)

As part of her creation of the customer accounts identified above, Ms. Brooks was presented with CVS's terms of use ("Terms of Use") and Privacy Policy. (Bowe Decl. ¶¶ 11–13; *id.*, Ex. B.) In addition, when a user opens the CVS App, as Ms. Brooks did repeatedly, there is an opportunity to review CVS's Privacy Policy, described below, via the menu bar.

Android App




iOS App




(Declaration of Whitney M. Smith ("Smith Decl."), Exs. 2, 4.)

***Plaintiff Nora Borowsky.*** CVS's records reflect that Ms. Borowsky is also a long-standing

and repeat CVS customer. (Bowe Decl. ¶ 18.) Specifically, these records reflect that Ms. Borowsky had multiple customer relationships with CVS, including as (i) an EC member starting in around May 2017, (ii) an EC Plus member starting around February 2023, which account has since lapsed, (iii) a CVS.com Account holder starting in around August 2023, and (iv) a PHR member. (*Id.*) These relationships are confirmed by Ms. Borowsky's allegations, where she claims that, at all times relevant to the conduct at issue, she was "signed in" to her account. (Compl. ¶¶ 3, 5, 50, 52, 66.) Ms. Borowsky further alleges that, while signed in, she "used the [CVS App on her iOS device] to browse over-the-counter medications and refill her prescription medications" in or about November 2024. (*Id.* ¶ 5.) Ms. Borowsky alleges that she has been accessing her account on the CVS App starting in approximately November 2019. (*Id.*)

Since filing the Complaint, CVS's records reflect that Ms. Borowsky has continued to log into, use, and place at least one order on the CVS App, on or about February 2, 2025. (Bowe Decl. ¶ 23.) Indeed, these records indicate that, through February 6, 2025, Ms. Borowsky has logged into the CVS App approximately sixty-two times since filing the Complaint. (*Id.*) As described above, when a user opens the CVS App on a mobile device, there is an opportunity to review CVS's Privacy Policy via hyperlink. (Smith Decl., Exs. 2, 4.)

In connection with creating her various CVS customer accounts, Ms. Borowsky was presented with CVS's Terms of Use and Privacy Policy. (Bowe Decl. ¶¶ 19–21.) In addition, by letter dated April 10, 2024, Ms. Borowsky, through counsel, notified CVS that she intended to commence an arbitration to assert privacy-related claims based upon Ms. Borowsky's alleged use of CVS's website. (*See id.* ¶ 22.) As part of that threat, Ms. Borowsky asserted that she and CVS are bound by the Terms of Use dated January 11, 2023. (*Id.*)

**C. The Complaint**

On December 12, 2024, Plaintiffs filed a two-count complaint alleging violations of CIPA, Cal. Penal Code §§ 631(a), 632. (Compl. ¶¶ 1–2) Plaintiffs' claims are predicated upon their purported interaction with CVS through the CVS App. (*Id.* ¶¶ 4–5.) Specifically, Plaintiffs allege that CVS "enabled" a third-party, QM, to intercept their communications with CVS in "real-time." (*Id.*) According to Plaintiffs, CVS used QM's session replay function to capture consumer

personally identifying information ("PII") and prescription medicine names in an unencrypted manner, notwithstanding QM's statements that it encrypts any user PII. (*Id.* ¶¶ 23, 50–56.)

Plaintiffs allege that CVS enabled QM to intercept iOS users' "first name, e-mail address, medication they viewed, and their vaccination history." (*Id.* ¶ 51.) Plaintiffs also allege that CVS enabled QM to intercept Android users' "full name, e-mail address, phone number, shipping address," medication viewed, vaccination history, and the CVS store address where they fill prescriptions. (*Id.* ¶ 52.) Plaintiffs further allege that they had "an objectively reasonable expectation of privacy" over the information allegedly intercepted by QM, and did not consent to the conduct at issue. (*Id.* ¶¶ 50, 57, 82, 84, 93–94.)

Plaintiffs seek to proceed on a putative class basis on behalf of all California residents who accessed the CVS App while signed into their CVS pharmacy account in California. (*Id.* ¶¶ 65–72.) Plaintiffs further seek statutory damages of $5,000 per violation. (*Id.* ¶¶ 86, 96.)

**D. The Account Creation Process**

As set forth above, Plaintiffs had multiple customer accounts, including, for example, CVS.com Accounts created on or about April 2023 and August 2023, respectively. (Bowe Decl. ¶¶ 10, 18.) To create a CVS.com Account, Plaintiffs were required to complete an account creation screen, similar to what is reflected below, whereby they were presented with CVS's Terms of Use and Privacy Policy:




(Bowe Decl., Ex. B.)

The Terms of Use and Privacy Policy are both available at the hyperlinks reflected in red above, providing Plaintiffs with the opportunity to review both documents. (*Id.* ¶¶ 12–13, 20–21.) Moreover, in creating their accounts, Plaintiffs were presented with a disclosure similar to the above, which stated: "By creating an account, you agree to the CVS Pharmacy Terms of Use and Privacy Policy[,]" with the links to the Terms of Use and Privacy Policy appearing in close proximity to the disclosure and the "Create your account" button. (*Id.* ¶ 11; *id.*, Ex. B.)

### E. CVS's Terms of Use and Privacy Policy

At the time of this account creation, the Terms of Use available at the hyperlink in the sign-in screen contained an arbitration provision and provided that CVS may "update [the Terms of Use] by notifying you of such updates by any reasonable means, including by posting the updated Agreement to the Site." (*Id.*, Exs. C, E.) On or about March 20, 2024, CVS updated the Terms of

Use which includes a dispute resolution. (*See id.*, Ex. G.) Plaintiffs continued to use their CVS accounts after updates to the Terms of Use.[2] (*See* Bowe Decl. ¶¶ 16, 23.)

At all relevant times, the Terms of Use also provided the following under the section heading, "Your Obligations":

> Your submission of information through the Service is governed by our Privacy Policy, located at https://www.cvs.com/help/privacy_policy.jsp ("Privacy Policy"), which, among other things, explains how we seek to protect the privacy of the personal information that you provided to us through the Service….And you permit us to use the information in accordance with the Privacy Policy.

(*Id.*, Exs. C, E, G.)

The referenced Privacy Policy,[3] in turn, disclosed the personal information that CVS collects, including the disclosures set forth below:

> *(b) Information You May Provide*
>
> When you use our Services, we may collect Personal Information from you, such as when you create an account, your interactions with our CVS Pharmacy stores, our Site or CVS App, or your enrollment in programs such as e-receipt or ExtraCare.
>
> *(c) Information We May Automatically Collect*
>
> When you visit and interact with our Services, we or our third-party advertising and analytics partners and services providers may use a variety of technologies, such as cookies, tags, SDKs or scripts, to collect certain information regarding your activity.
>
> The specific types of information that we and our partners and service providers may automatically collect when you visit and interact with our Services include:
>
> - **Device and Browser Information**. This includes your device's

---

[2] On or about March 17, 2025, CVS updated the Terms of Use again and reserves the right to argue that these updated terms apply in this proceeding or any other dispute resolution process. (*See* Bowe Decl. ¶ 26, Ex. H.)

[3] As with the Terms of Use, CVS reserves the right to make changes to the Privacy Policy at any time, which changes shall be effective when made available online. (*See* Bowe Decl., Exs. D, F.) Accordingly, the disclosures set forth above are those that were in effect at the time the Complaint was filed. (*See id.*, Ex. J.) At all relevant times, however, CVS's governing Privacy Policy made similar disclosures to consumers. (*See id.*)

> IP address and/or other unique identifiers, browser type, device type, internet service provider, and operating system.
>
> […]
>
> - **Usage Information.** When you interact with our Services, certain information may be collected by us or our third party vendors, such as the date and time of your visit, the pages you view immediately before and after you access our Services….and other use and overall engagement with our Services.
>
> - **Third-Party Analytics Technologies**. We may use third-party analytics tools to better understand who is using our Services, how people are using them, and how to improve their effectiveness as well as the effectiveness of any related content.

(*Id.*, Ex. J.) The Privacy Policy also provided as follows:

> **2. How We May Disclose Your Personal Information**
> We may disclose Personal Information that we collect to the following categories of recipients:
>
> - **Our Service Providers.** We disclose your Personal Information to our service providers that provide business, professional, or technical support services to us, help us operate our business and the Services, or administer activities on our behalf. We require our service providers to only use your Personal Information in connection with providing services to CVS.

(*Id.*; *see also* Smith Decl., Exs. 2, 4.) The Privacy Policy further advised that, should consumers seek additional information on "how CVS Health company collects and uses information for any healthcare services including CVS Pharmacy[,]" they should visit the hyperlinked CVS Privacy Center to review service-specific privacy disclosures, such as the CVS Pharmacy Notice of Privacy Practices (the "Notice"). (*See* Bowe Decl., Exs. J–K.) The Notice, provided, at the relevant time, that CVS is permitted to share PHI without approval to "business associates," because they "***are required by law and their agreements with us to protect your PHI in the same way we do.***" (*Id.*, Ex. K.) (emphasis added).) As demonstrated, QM is a business associate of CVS.

### F. Disclosures Regarding the CVS App

In connection with the process of downloading the CVS App on an Android device, a user

has the opportunity to review CVS Health Data Safety details presented in the Google Play Store. (Smith Decl., Ex. 1.) As set forth in Exhibit 1, when a user downloads the CVS App from the Google Play Store, he or she has the opportunity to review a disclosure that warns that certain information may be shared with "other companies and organizations" including "app activity" such as "app interactions and other user-generated content" along with "personal info" such as "name, email address, user IDs, address, phone number, and other info." (*Id.*) The disclosure also includes that such information may include "health info" and provides a further opportunity to review CVS's Privacy Policy. (*Id.*)

Similarly, as part of the process for downloading the CVS App from the iOS App Store, a user has the opportunity to review the types of data that CVS, as the app developer, may share with third-parties. (*Id.*, Ex. 2.) This disclosure warns CVS App users of the types of information that may be "linked" to users, including "usage data" and "sensitive info." (*Id.*) As part of this disclosure, the user is provided with an additional opportunity to review CVS's Privacy Policy. (*Id.*)

## III. <u>MOTION TO DISMISS</u>

### A. Legal Standard Pursuant to Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a litigant to seek dismissal of an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *see Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Plaintiffs, as "the part[ies] seeking to involve the jurisdiction of the federal court[,] ha[ve] the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). A jurisdictional attack under Rule 12(b)(1) "can be either facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). To resolve a factual attack, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" and "need not presume the truthfulness of the plaintiff's allegations." *Safe Air*, 373 F.3d at 1039.

If a plaintiff lacks Article III standing, "dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)" is required. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). To establish "the irreducible constitutional minimum" of standing, Plaintiffs must have "(i) suffered an injury in fact, (ii) that is fairly traceable to the challenged conduct of the defendant, and (iii) that is

likely to be redressed by a favorable judicial decision." *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 863 (S.D. Cal. 2023) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)).

To establish injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (citation omitted). "Traditional tangible harms," such as physical and monetary harms, qualify as "concrete" injuries. *TransUnion*, 594 U.S. at 425. So do certain "intangible harms" that have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* The Supreme Court made clear in *Spokeo* that "Article III standing requires a concrete injury even in the context of a statutory violation," and therefore, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo*, 578 U.S. at 341; *TransUnion*, 594 U.S. at 441.

**B. CIPA Claims Require Plaintiffs to Show Harm**

Since 2022, California courts have been flooded with CIPA claims similar to those alleged by Plaintiffs here. In response, courts in the Ninth Circuit and beyond have scrutinized the issue of standing, differentiating between claims that establish a violation of a protectable privacy interest and those claims that do not. *See, e.g.*, *Lien v. Talkdesk, Inc.*, No. 3:24-cv-06467, 2025 WL 551664, at *1 (N.D. Cal. Feb. 19, 2025) (finding information allegedly intercepted "is simply not private or personal enough to confer standing where each plaintiff alleges only that it was collected from one call made to one retailer."); *Massie v. Gen. Motors LLC*, No. 1:21-cv-00787, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) (dismissing CIPA claims for lack of standing on the grounds that plaintiff failed to allege a concrete injury); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049–50 (N.D. Cal. 2022) (finding disclosure of "basic contact information, including one's email address, phone number, or . . . username" inadequate to establish Article III standing based on the "insufficient fit between the loss of information alleged here and the common law privacy torts of private disclosure of private facts and intrusion upon seclusion."); *Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350, at *1–2 (9th Cir. Dec. 17, 2024) (allegations that plaintiff had "visited and

accessed" Bloomingdale's website were insufficient to confer Article III standing for purposes of a CIPA claim); *see also Gabrielli v. Insider, Inc.*, 1:24-cv-01566, 2025 WL 522515, at *4–5 (S.D.N.Y. Feb. 18, 2025) (finding IP addresses do not constitute personal information, and thus, their disclosure does not bear a close relationship to the common law privacy harms, nor can it establish standing under *TransUnion* for purposes of a CIPA pen register claim). This concept is reinforced by the plain language of CIPA itself, which provides for recovery for "[a]ny person who *has been injured* by a violation of this chapter [to] bring an action against the person who committed the violation. . . ." Cal. Penal Code § 637.2 (emphasis added).

Thus, the emerging theme from California courts and elsewhere is clear: even where a plaintiff asserts a statutory violation under CIPA, they must still demonstrate they suffered harm—a notion that is entirely consistent with *TransUnion* and the statutory text, itself. *See Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1078 (C.D. Cal. 2023) ("Violations of [p]laintiffs' statutory rights under CIPA, [even] without more, constitute injury in fact because instead of a bare technical violation of a statute, . . . a CIPA violation involves. . .*a violation of privacy rights*.") (alteration in original) (emphasis added) (internal quotation and citation omitted). While Plaintiffs here may seek to differentiate their claims from other CIPA cases that have been dismissed on this basis by alleging the disclosure of sensitive health information, their own conduct, as well as CVS's privacy practices, demonstrate that they too, fail to establish the requisite injury. Specifically here, the absence of any injury is confirmed by: (i) Plaintiffs' own conduct after filing the Complaint, (ii) the contemporaneous disclosures of CVS's use of the type of technology provided by QM, (iii) the contractual limitations imposed upon QM through the BAA in place with CVS, and (iv) the absence of allegations to support any harm.

#### 1. *Plaintiffs' Continued Interactions with the CVS App Demonstrate They Suffered No Injury*

As an initial matter, it is not reasonable for Plaintiffs to contend that their alleged interactions with the CVS App subjected them to privacy harms, given both their continued use of it after filing the Action and QM's status as a legally permitted business associate of CVS. (*See* Bowe Decl. ¶¶ 16, 23; *id.* ¶ 8; *id.*, Ex. A.) Consistency of conduct is a well-established principle in common law

privacy claims. "The plaintiff in an invasion of privacy action must have conducted himself or herself in a manner consistent with an actual expectation of privacy, *i.e.*, he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant." *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1034 (N.D. Cal. 2014) (citing *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26 (1994)); *see also Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 846 (S.D. Cal. 2024) (finding Plaintiff lacked Article III standing to assert a claim for injunctive relief where "Plaintiff's continued use of Defendants' website, now that Plaintiff has notice of Defendants' use of session replay code, would constitute consent to any recording."); *Hill*, 7 Cal. 4th at 26 ("[Where] voluntary consent is present, a defendant's conduct will rarely be deemed 'highly offensive to a reasonable person' so as to justify tort liability.") (citation omitted).

Here, after filing the Complaint, Plaintiffs continued to use the CVS App with regular frequency. (Bowe Decl. ¶¶ 16, 23.) Plaintiffs took no action to limit or stop interacting with respect to the information that they assert was too sensitive to "be disclosed [or] intercepted by third parties like QM." (Compl. ¶ 93.) At bottom, Plaintiffs' continued use of the CVS App is fatal to their alleged privacy injuries, and demonstrates Plaintiffs' actual indifference towards the alleged disclosure of their purportedly "sensitive" information to CVS's business associate. (Compl. ¶ 50; *see* Bowe Decl., Ex. A.)

### 2. *Plaintiffs Were Informed of the Presence of Third-Party Technology*

Although Plaintiffs' allegations of unlawful wiretapping are premised upon a lack of consent (Compl. ¶¶ 4–5, 47, 57, 94), these claims are directly contradicted by Plaintiffs' creation of CVS.com Accounts, their enrollments into CVS rewards programs, and their use of the CVS App.

For example, in order to create their CVS.com Accounts, Plaintiffs were presented with the Terms of Use and Privacy Policy. (*See* Bowe Decl. ¶¶ 11–13, 19–21; *id.*, Ex. B.)) The Terms of Use notified Plaintiffs that any "submission of information" on the CVS App was governed by the Privacy Policy, "which, among other things, explains how we seek to protect the privacy of the personal information that you provided to us through the Service. . . .And you permit us to use the information in accordance with the Privacy Policy." (*Id.*, Ex. G.)

The Privacy Policy further put Plaintiffs on notice at all relevant times that CVS may disclose

their personal information to third-parties, including vendors performing services for CVS such as data analytics. (*Id.*, Ex. J.) This information included user contact information (such as first name, last name, address, and email address), information about enrollment into programs like EC, and "interactions with" CVS's online services, "such as the date and time of your visit, the pages you view immediately before and after you access our Services. . . and other use and overall engagement with our Services." (*Id.*) Moreover, the Notice, which was also available to Plaintiffs via hyperlinks in the Privacy Policy, specifically disclosed that PHI may be disclosed to "business associates" such as QM, that are "required by law and their agreements" to protect PHI in the same way" that CVS does. (*Id.*, Ex. I.)

Even more, both Plaintiffs were on notice of CVS's data collection practices when they downloaded the CVS App on their Android and Apple devices. (*See* Smith Decl., Exs 1, 3.) Both the App Store and the Google Play Store provided disclosures informing CVS App users that the App may collect and share user information (such as "personal info," "health info," and "sensitive info). (*See id.*) Moreover, the disclosures on both the App Store and the Google Play Store provide users with the additional opportunity to review CVS's Privacy Policy. (*See id.*)

Given these repeated and consistent disclosures, Plaintiffs' claims that they did not consent to have their data disclosed to a third-party, for the legally permissible purposes set forth in the CVS Privacy Policy, are implausible on their face. *See Lakes v. Ubisoft*, No. 3:24-cv-06943, 2025 WL 1036639, at *5–6, *8 (N.D. Cal. Apr. 2, 2025) (dismissing CIPA claims based on consent where plaintiffs affirmatively agreed to defendant's privacy policy, terms of use, and terms of sale when creating their accounts, and were repeatedly presented with the governing privacy policy each time they made a purchase from defendant's website thereafter); *Silver v. Stripe Inc.*, No. 4:20-cv-08196, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (dismissing CIPA claims based on consent where privacy policy disclosed collection methods); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1135–37 (N.D. Cal. 2015) (dismissing wiretap claim where privacy policy disclosed "we may share your personal information with our agents, representatives, contractors and services providers"). Thus, Plaintiffs could not possibly have suffered any injury from conduct that they were aware of and to which they consented. Plaintiffs' claims must be dismissed on this ground as well.

**3.** ***Plaintiffs' Privacy Interests Were Not Violated When There Is No Third Party Eavesdropper***

In order to trigger the protections of CIPA, there must be a third-party that allegedly eavesdropped upon or recorded the communication. *See Thomasson v. GC Servs. Ltd. P'Ship*, 321 F. App'x 557, 559 (9th Cir. 2008) (explaining that California courts interpret the anti-eavesdropping provision of the CIPA "to refer to a third party secretly listening to a conversation between two other parties."); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021) ("Only a third party can listen to a conversation secretly[,]" in violation of CIPA); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 125–27 (N.D. Cal. 2023) (finding plaintiffs failed to allege CIPA violation because defendant Apple was not a third party to plaintiffs' communications). Here, because QM was contractually limited in any use of PHI for its own purpose, (Bowe Decl., Ex. A), it was acting as a mere extension of CVS—not a third-party sufficient to trigger the protections of CIPA. Accordingly, Plaintiffs have suffered no injury in the absence of any third-party to the conversation.

**4.** ***Plaintiffs Allege Only Speculative Harm That Is Insufficient to Confer Article III Standing***

Plaintiffs' claims must also be dismissed as they fail to identify any "actual" or "imminent" physical, economic, or property harm as a result of their interactions with the CVS App. *See TransUnion*, 594 U.S. at 423; (*see* Compl. ¶¶ 82–84, 93–95.) Instead, Plaintiffs merely assert speculative allegations of harm, such as "[c]ollection of page content by third-party replay scripts *may* cause" information such as "medical conditions" and "credit card details" to "leak to [a] third-party," which "*may* expose users to identify theft, online scams, and other unwanted behavior." (Compl. ¶ 21 (emphasis added).) But such speculative allegations do not support Article III standing. *See I.C.*, 600 F. Supp. 3d at 1052 (finding no standing existed based on susceptibility to future fraud because harms are "too conjectural"); *see also Antman v. Uber Techs., Inc.*, No. 3:15-cv-01175, 2018 WL 2151231, at *11 (N.D. Cal. May 10, 2018) (finding the theft of a name, driver's license, and bank account and routing information, did not establish a credible risk of real, immediate injury); *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1229 (N.D. Cal. 2022) (noting that "a hypothetical loss of value was insufficient" to establish injury in fact by diminution in value of

personal information) (citing *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019)).

Even assuming the allegations in the Complaint are true, which they are not, a third-party's collection of Plaintiffs' data on behalf of CVS does not resemble "a close relationship" to traditional privacy harms under California law, given that Plaintiffs consented to the practice, and continued to use the CVS App despite alleging it violates their privacy interests. (*See* Bowe Decl. ¶¶ 16, 23.) Nor does CVS's contract with QM for third-party technology services serve as any evidence of Plaintiffs' alleged harm. Rather, CVS's engagement with QM reflects the increasingly routine practice amongst businesses to retain third-party service providers to assist with consumer data—such that California has enacted legislation that permits, and even endorses, these contractual relationships between companies and third-party technology providers. *See* Consumer Privacy Act, Cal. Civ. Code §§ 1798.100(a)–(d); Cal. Code Regs. Tit. 11, § 7051 (detailing the required contractual provisions for agreements between businesses and their service providers or contractors). Thus, despite Plaintiffs attempt to frame CVS as QM's alleged co-conspirator in some sort of deceptive scheme, the reality is that CVS fully discloses to users—like Plaintiffs—the information it collects, uses, and shares, as well as who that information is shared with. (*See* Bowe Decl., Exs. I–K.) As such, Plaintiffs' conclusory allegations of wrongdoing by CVS and QM are insufficient to establish concrete harm, and thus fatal to their underlying claims.

## IV. CVS RESERVES THE RIGHT TO SEEK TO COMPEL ARBITRATION

The Court must assure itself of its jurisdiction prior to addressing other issues, such as whether this dispute is subject to an arbitration agreement. *See, e.g.*, *Samsung Elecs. Am., Inc. v. Ramirez*, No. 1:17-cv-01462, 2018 WL 2198721, at *6 (E.D. Cal. May 14, 2018), *aff'd*, 777 F. App'x 243 (9th Cir. 2019) ("[T]he FAA does not independently create subject matter jurisdiction and….[w]ithout subject matter jurisdiction over the controversy, a court cannot consider a petition to compel arbitration.") (internal quotations and citations omitted); *Golden State Foods, Corp. v. Mendoza*, No. 2:14-cv-07045, 2014 WL 12589654, at *7 (C.D. Cal. Nov. 4, 2014) ("Because the Court lacks subject matter jurisdiction over the Petition, it does not address the parties' arguments as to the validity or enforceability of the arbitration agreement."); *see also Purnell v. GoodLeap*,

*LLC*, No. 2:22-cv-02773, 2023 WL 2761131, at *2 n.1 (E.D. Pa. Mar. 31, 2023) ("[W]e must make a jurisdictional determination before we decide the Motions to Compel Arbitration.") (citing *Edmondson v. Lilliston Ford, Inc.*, 593 F. App'x 108, 112 (3d Cir. 2014) ("The District Court is not precluded from making a threshold determination of subject matter jurisdiction prior to proceeding with an analysis of the motion to compel [arbitration]. To the contrary, a determination as to subject matter jurisdiction is a necessary component of that analysis. This is because the FAA does not independently confer federal subject matter jurisdiction.")).

However, should the Court decline to dismiss this case for lack of subject matter jurisdiction, CVS respectfully reserves the right to move for an order compelling Plaintiffs to arbitrate their claims on an individual basis, and to conduct limited discovery of Plaintiffs, given their multiple customer relationships with CVS and Ms. Borowsky's prior invocation of the arbitration agreement with CVS.[4]

## V. <u>CONCLUSION</u>

For the foregoing reasons, CVS respectfully requests that this Court grant Defendants' Rule 12(b)(1) Motion to Dismiss.

DATED: April 24, 2025

Respectfully submitted,

By: <u>*/s/ Whitney M. Smith*</u>

Whitney M. Smith (*pro hac vice*)
**KELLEY DRYE & WARREN LLP**
Lauri A. Mazzuchetti (*pro hac vice* forthcoming)
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Telephone: (973) 503-5900
Facsimile: (973) 503-5950
wsmith@kelleydrye.com
lmazzuchetti@kelleydrye.com

---

[4] CVS additionally reserves all rights to challenge the legal sufficiency of Plaintiffs' Complaint following an adjudication of this Court's jurisdiction and the appropriate forum for any dispute. *See, e.g.*, *Martin v. Yasuda*, 829 F.3d 1118, 1124–26 (9th Cir. 2016); *Ensambles Hyson, S.A. de C.V. v. Sanchez*, 718 F. Supp. 3d 1258, 1272 (S.D. Cal. 2024); *see also Lake Commc'ns, Inc. v. ICC Corp.*, 738 F.2d 1473, 1476–77 (9th Cir. 1984), *overruled on other grounds by Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 632–35 (1985).

**KELLEY DRYE & WARREN LLP**
Rebecca B. Durrant (SBN 350444)
888 Prospect Street, Suite 200
La Jolla, CA 92037
Telephone: (212) 808-7551
Facsimile: (213) 547-4901
rdurrant@kelleydrye.com

*Counsel for CVS Health Corporation and CVS Pharmacy, Inc.*