**KELLEY DRYE & WARREN LLP**
Lauri A. Mazzuchetti (*pro hac vice* forthcoming)
Whitney M. Smith (*pro hac vice*)
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Telephone: (973) 503-5900
Facsimile: (973) 503-5950
lmazzuchetti@kelleydrye.com
wsmith@kelleydrye.com

**KELLEY DRYE & WARREN LLP**
Rebecca B. Durrant (SBN 350444)
888 Prospect Street, Suite 200
La Jolla, CA 92037
Telephone: (212) 808-7551
Facsimile: (213) 547-4901
rdurrant@kelleydrye.com

*Counsel for Defendants CVS Health Corporation and CVS Pharmacy, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ARIEL BROOKS** and **NORA BOROWSKY,** individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**CVS HEALTH CORPORATION** and **CVS PHARMACY, INC.**,<br><br>Defendants. | Case No. 3:24-cv-08990-AMO<br><br>[Assigned to Hon. Araceli Martínez-Olguín]<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Hearing: Thursday, September 11, 2025<br>Time: 2:00 p.m.<br>Location: Courtroom 10 |

## TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1
II. ARGUMENT .......... 2
  A. This Court May Consider the Unrebutted Evidence Submitted by CVS .......... 2
    1. Plaintiffs Rely Upon the Improper Standard for this Motion .......... 2
    2. Plaintiffs Fail to Create a Factual Dispute .......... 3
  B. Plaintiffs Fail to Meet Their Burden to Prove Injury .......... 4
    1. CVS's Disclosures Are Fatal to Any Showing of Injury .......... 4
      a. CVS Gave Notice of the Privacy Policy .......... 5
      b. The Disclosures Were Clear and Conspicuous .......... 6
        i. The Evidence of The Account Creation Process Is Sufficient .......... 6
        ii. The Webform Is Adequate .......... 6
        iii. Plaintiffs Fail to Demonstrate Inadequate Notice .......... 8
      c. The Privacy Policy Disclosed the Activity at Issue .......... 10
    2. Irrespective of CVS's Disclosures, Plaintiffs Did Not Experience Any Injury .......... 12
      a. Continued Interactions Demonstrate No Injury in the First Instance .......... 12
      b. Speculative Future Harm Is Not a Sufficient Injury Under Article III .......... 13
      c. CVS's Use of QM Was Consistent with Applicable Law .......... 14
III. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambriz v. Google, LLC*,
No. 3:23-cv-05437, 2025 WL 830450 (N.D. Cal. Feb. 10, 2025) .......... 15

*Am. Hosp. Ass'n v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. June 20, 2024) .......... 2

*Antman v. Uber Techs., Inc.*,
No. 3:15-cv-01175, 2018 WL 2151231 (N.D. Cal. May 10, 2018) .......... 14

*Augustine v. Lenovo, Inc.*,
No. 3:22-cv-02027, 2023 WL 4938050 (S.D. Cal. Aug. 2, 2023) .......... 8

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) .......... 8, 11

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) .......... 7, 8

*Cody v. Ring, LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) .......... 8

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) .......... 8

*Doe 1 v. AOL LLC*,
719 F. Supp. 2d 1102 (N.D. Cal. 2010) .......... 13

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 3:23-cv-02865, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .......... 15

*Foster v. Essex Prop. Inc.*,
No. 5:14-cv-05531, 2017 WL 264390 (N.D. Cal. Jan. 20, 2017) .......... 4

*Frasco v. Flo Health Inc.*,
No. 3:21-cv-00757, 2025 WL 1433825 (N.D. Cal. May 19, 2025) .......... 4

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) .......... 9

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) .......... 9, 10

*Greenstein v. Noblr Reciprocal Exch.*,
585 F. Supp. 3d 1220 (N.D. Cal. 2022) .......... 14

*Hammerling v. Google, LLC*,
No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) .......... 12

*Herzog v. Superior Court*,
101 Cal. App. 5th 1280 (2024) .......... 10

*Hong v. StubHub, Inc.*,
No. 2:24-cv-03318, 2024 WL 4720924 (C.D. Cal. Sept. 9, 2024) .......... 6

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) .......... 14

*Jones v. Ford Motor Company*,
85 F.4th 570 (9th Cir. 2023) .......... 3

*Khamooshi v. Politico LLC*,
No. 3:24-cv-07836, 2025 WL 1408896 (N.D. Cal. May 13, 2025) .......... 13

*Lakes v. Ubisoft, Inc.*,
No. 3:24-cv-06943, 2025 WL 1036639 (N.D. Cal. Apr. 2, 2025) .......... 4, 5

*Lee v. DoNotPay, Inc.*,
683 F. Supp. 3d 1062 (C.D. Cal. July 20, 2023) .......... 9

*Lee v. Ticketmaster LLC*,
817 F. App'x 393 (9th Cir. 2020) .......... 7

*Lawrence v. Finicity Corp.*,
No. 24-1737, 2025 WL 547375 (9th Cir. Feb. 19, 2025) .......... 7

*Massie v. Gen. Motors LLC*,
No. 1:21-cv-00787, 2022 WL 534468 (D. Del. Feb. 17, 2022) .......... 3

*Maynez v. Walmart, Inc.*,
479 F. Supp. 3d 890 (C.D. Cal. 2020) .......... 6

*McCoy v. Alphabet, Inc.*,
No. 5:20-cv-05427, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021) .......... 11

*McKee v. Audible, Inc.*,
No. 2:17-cv-01941, 2017 WL 7388530 (C.D. Cal. Oct. 26, 2017) .......... 6

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. July 17, 2023) .......... 4

*Moyer v. Chegg, Inc.*,
No. 4:22-cv-09123, 2023 WL 4771181 (N.D. Cal. July 25, 2023) .......... 7

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) .......... 7, 8, 10

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) .......... 8

*Peter v. Doordash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. Apr. 23, 2020) .......... 9

*Popa v. Harriet Carter Gifts, Inc.*,
No. 2:19-cv-00450, 2025 WL 896938 (W.D. Pa. Mar. 24, 2025) .......... 12

*Robbins v. Mscripts, LLC*,
No. 3:23-cv-01381, 2023 WL 5723220 (N.D. Cal. Sept. 5, 2023) .......... 6

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .......... 3

*Savage v. Glendale Union High Sch.*,
343 F.3d 1036 (9th Cir. 2003) .......... 3

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) .......... 5

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .......... 11

*Snyder v. G6 Hosp. LLC*,
No. 5:24-cv-02423, 2025 WL 1254382 (C.D. Cal. Apr. 14, 2025) .......... 4

*St. Clair v. City of Chico*,
880 F.2d 199 (9th Cir. 1989) .......... 3

*Tate v. VITAS Health Corporation*,
762 F. Supp. 3d 949 (E.D. Cal. 2025) .......... 15

*TransUnion v. Ramirez*,
594 U.S. 413 (2021) .......... 13

**Statutes**

42 U.S.C. 1320d *et seq.* .......... 1

**Other Authorities**

Cal. S.B. 690 (2025-2026) .......... 2

Hrg. on Cal. S.B. 690 Before the Cal. Sen. Pub. Safety Comm. (Apr. 29, 2025) .......... 13

L.R. 79-5 .......... 14

CVS[1] submits this reply in support of its motion to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1) (the "Motion").

## I. INTRODUCTION

This Action arises out of Plaintiffs' allegations that their privacy interests were violated by their alleged loss of ability to control information they voluntarily disclosed on the internet. Defendants established in the Motion that these allegations do not support a conclusion that Plaintiffs suffered injury sufficient to maintain standing, as required under Article III. Indeed, CVS submitted unrefuted evidence that (1) after filing the Complaint, Plaintiffs repeatedly interacted with CVS in the very same manner that they allege violated their privacy in the first instance, (2) the conduct complained of was disclosed—repeatedly—to Plaintiffs and they had the opportunity to agree to such disclosures, (3) CVS implemented the safeguards required under the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. 1320d *et seq.*, for the use of the QM tool by entering into a BAA with QM, and (4) Plaintiffs' other alleged harms are purely speculative.

In light of the record, Plaintiffs' allegations of injury need not be accepted as true on this Motion, which, unlike a Rule 12(b)(6) motion, permits this Court to consider evidence outside the pleadings. Although Plaintiffs bear the burden to demonstrate injury, Plaintiffs do not rebut the evidence submitted by CVS or even attempt to offer support for their claim that they did, in fact, suffer a concrete injury. Instead, Plaintiffs rely upon the allegations in the Complaint and attempt to dismiss CVS's repeated disclosures concerning the use of QM, and argue (without evidence) that these disclosures were not sufficiently clear, or otherwise rip them from context and attempt to impermissibly view them in isolation. These efforts are not enough to withstand dismissal.

Practically speaking, Plaintiffs' allegations, if accepted, would require CVS to become experts in website design and technical support. CVS utilizes third-party tools in order to maintain its website, because it is not a technology company and could not exist in the marketplace without the ability to outsource out certain tasks. In doing so, CVS complies with the requirements for its technology vendors imposed by HIPAA. Irrespective of this compliance, Plaintiffs wrongly claim

[1] All terms defined in the Motion shall have the same definition here. (*See* Dkt. 30.)

CVS "disobeyed" the December 2022 Department of Health and Human Services ("HHS") guidance. Plaintiffs fail to acknowledge that this guidance was overturned as an overreach of executive power in *American Hospital Association v. Becerra*, 738 F. Supp. 3d 780 (N.D. Tex. June 20, 2024). The court in *Becerra* noted, "HIPAA provides robust protections for PHI" including "obligatory Business Associate Agreements ('BAAs') for outside providers, and a host of other obligations." *Id.* at 788–89. Similarly, accepting these allegations as true would cut against the CCPA's framework for businesses that lawfully contract with third-party service providers, as CVS did here. (*See* Mot. at 16.) Contrary to Plaintiffs' assertions (Opposition ("Opp.") at 7, Dkt. 39), CIPA does not provide the most protection for consumers, nor was it intended to, given that it was enacted in 1967 when much of this technology did not even exist. Indeed, in an effort to curb abusive litigation under CIPA, the California assembly is currently considering an amendment to CIPA that would limit the very sort of claim asserted here, which seeks to apply a statute that is almost 60 years old to modern day technology. *See* Cal. S.B. 690 (2025-2026).

In sum, Plaintiffs' attempt to obtain a statutory damages windfall disguised in the name of a privacy violation should not be permitted to proceed and the Motion should be granted.

## II. ARGUMENT

### A. This Court May Consider the Unrebutted Evidence Submitted by CVS

Plaintiffs failed to establish any injury, therefore this Court lacks subject matter jurisdiction under Article III. (Mot. at 11–16.) As a factual attack under Rule 12(b)(1), the Court may review evidence beyond the Complaint, introduced by either the movant or the opposing party, and need not presume the truthfulness of the Plaintiffs' allegations. (Mot. at 10). Nothing in the Opposition rebuts CVS's evidence and the Motion should be granted.

#### 1. Plaintiffs Rely Upon the Improper Standard for this Motion

In arguing that this Court should defer addressing the issues raised by the Motion, Plaintiffs repeatedly and incorrectly conflate the Rule 12(b)(1) Motion with a Rule 12(b)(6) motion and improperly rely upon Rule 12(b)(6) cases where the Courts' inquiry is more limited. (*See* Opp. at 4–5) (citing *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) (declining to review extrinsic evidence while deciding a Rule 12(b)(6) motion)). Nor do Plaintiffs

appreciate that, in a factual attack to jurisdiction, as here, the Court is permitted to consider evidence beyond the Complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Plaintiffs ignore these distinctions in jurisdictional challenges, and contend "the relevant law is settled" that a simple allegation that private information was disclosed is sufficient for Article III standing for a CIPA claim. (Opp. at 2) (quoting *Jones v. Ford Motor Company*, 85 F.4th 570, 574 (9th Cir. 2023)). In *Jones*, however, the Ninth Circuit held that an allegation plausibly articulated an Article III injury for a claim under the Washington Privacy Act in a *facial* attack to jurisdiction. 85 F.4th at 573–74. The Court did not find that a mere allegation of a disclosure of information is sufficient to assert Article III standing for a CIPA claim where a *factual* attack is made rebutting the complaint's allegations. Accordingly, Plaintiffs' cases do not bear on the outcome of this Motion.

2. Plaintiffs Fail to Create a Factual Dispute

CVS established that Plaintiffs received repeated disclosures concerning CVS's use of technology similar to QM and that, despite having actual knowledge of the use of the QM tool, Plaintiffs continued to engage with CVS on the CVS App. (Mot. at 12–14.) In response, Plaintiffs were required to come forward with evidence to rebut the lack of injury. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) ("[T]he party opposing [a factual attack must] present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction."); *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003) (same). Plaintiffs offered no such evidence, leaving the facts presented by the Bowe and Smith Declarations, including the specific disclosures set forth in the privacy policy, unrebutted.

Plaintiffs cannot avoid this failure by asking this Court to defer an evaluation of standing until there is "a fuller factual record." (Opp. at 5.) A jurisdictional challenge to standing is a threshold inquiry that must be resolved before the Court can proceed. *See Massie v. Gen. Motors LLC*, No. 1:21-cv-00787, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) ("Article III standing is a prerequisite for a federal court's subject matter jurisdiction"). Further, the jurisdictional challenge does not involve factual disputes that are intertwined with the merits of the case, because Plaintiffs have offered no evidence to create such a dispute. While Plaintiffs are correct that it is Defendants' burden to prove consent, (Opp. at 12), Plaintiffs did not rebut Defendants' showing. Even if this

Court concludes that these issues are intertwined with the merits (they are not), Courts in this district can, and have, decided consent issues at the pleading stage. *See, e.g.*, *Lakes v. Ubisoft, Inc.*, No. 3:24-cv-06943, 2025 WL 1036639, at *8 (N.D. Cal. Apr. 2, 2025) (analyzing the privacy disclosures and dismissing CIPA claims because consent was provided by plaintiffs); *Snyder v. G6 Hosp. LLC*, No. 5:24-cv-02423, 2025 WL 1254382, at *5 (C.D. Cal. Apr. 14, 2025) (finding plaintiff consented to the allegations through the privacy policy).

The Court should therefore dismiss the Complaint for lack of standing on Plaintiffs' evidentiary failing alone. *See, e.g.*, *Foster v. Essex Prop. Inc.*, No. 5:14-cv-05531, 2017 WL 264390, at *3–4 (N.D. Cal. Jan. 20, 2017) (dismissing privacy action based on defendants' evidence showing lack of standing and plaintiffs' failure to offer any evidence of their own in opposition).

**B. Plaintiffs Fail to Meet Their Burden to Prove Injury**

Plaintiffs, as the parties invoking federal jurisdiction, have the burden to establish the elements of standing, including that: (i) Plaintiffs have suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) the injury was likely caused by CVS; and (iii) the injury would likely be redressed by judicial relief. *See Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 863 (S.D. Cal. July 17, 2023). While "CIPA codifies a substantive right to privacy" and "the right to privacy encompasses an individual's control of information concerning his or her person[,]" the Supreme Court has explained, "the alleged injury must bear a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts, such as disclosure of private information and intrusion upon seclusion." *Id.* at 863–64 (internal quotations and citations omitted). Plaintiffs cannot meet this burden.

1. <u>CVS's Disclosures Are Fatal to Any Showing of Injury</u>

Plaintiffs contend that "the substantive privacy interest the CIPA protects is a person's right to control information concerning his or her person." (Opp. at 5) (internal quotation and citation omitted). Plaintiffs rely on *Frasco v. Flo Health Inc.*, which held "the legal injury at the heart of plaintiffs' case -- the capture of personal information *without a user's consent* -- occurs when the personal information is obtained in the first instance." No. 3:21-cv-00757, 2025 WL 1433825, at *11 (N.D. Cal. May 19, 2025) (emphasis added). No harm exists where an individual voluntarily

surrenders or delegates control over their personal information through expressions of consent. *See, e.g.*, *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017) (holding consent is a defense under California Constitution privacy claims and common-law tort claims for intrusion upon seclusion); *Lakes*, 2025 WL 1036639, at *8 (holding user consent is a defense under CIPA).

Here, Plaintiffs claim that they suffered an injury in fact sufficient to confer Article III standing "the moment their health information ended up in QM's hands" allegedly causing Plaintiffs to "los[e] control of their personal information[.]" (Opp. at 6.) But these allegations do not square with facts presented in CVS's Motion—establishing that Plaintiffs consented to CVS's privacy policy, which disclosed the use of third-party service providers on the CVS App. (Mot. at 13–14.)

*a. CVS Gave Notice of the Privacy Policy*

CVS demonstrated that Plaintiffs were placed on notice of the complained of activities.[2] (*Id.*) When Brooks and Borowsky created their CVS.com Accounts in March 2023 and August 2023, respectively, Plaintiffs were presented with, *inter alia*, the CVS privacy policy, which at all times disclosed the activity at issue, as explained further below. Moreover, after receiving these disclosures, Plaintiffs clicked a button to create a CVS.com Account beneath the disclosure language, which stated that, by creating the account, they agree to the CVS privacy policy. (*Id.*)

Additionally, Plaintiffs were notified of the privacy policy and privacy practices when they downloaded the CVS App from the Google Play Store and App Store, respectively. (*Id.* at 4–5, 9–10; Smith Decl., Exs. 1, 3.) Plaintiffs contend the Play Store and App Store disclosures were insufficient (Opp. at 18), however, the screenshots demonstrate that the Play Store discloses that the CVS App may share "Health info" for "App functionality," (Smith Decl., Ex. 1 at 3), and the App Store discloses that the CVS App may collect and link "Health & Fitness" information to users identify and directs users to refer to the privacy policy for more information. (*Id.* at 1.) Thus, Plaintiffs were sufficiently notified of and consented to the privacy practices prior to their CVS App

[2] Defendants disagree with Plaintiffs' assertions that CVS's updated terms and privacy policy do not apply to their claims. (Opp. at 21.) For purposes of the instant dispute, however, Defendants do find it necessary to litigate this issue, given the similarities of the disclosures at issue. That said, CVS reserves the right to enforce the updated terms and privacy policy at any point in the future.

use, which as alleged in the Complaint, occurred as to Ms. Brooks in October 2024 and as to Ms. Borowsky in November 2024.

*b. The Disclosures Were Clear and Conspicuous*

As explained above, CVS submitted a sworn declaration, which included screenshots of the CVS.com Account creation process. This process requires consent to the privacy policy, and Plaintiffs necessarily completed a similar form to create their accounts. (*See* Bowe Decl. ¶¶ 11, 19; *id.*, Ex. B.) Such account creation occurred prior to the alleged activity, (*id.*; *see also* Compl. ¶¶ 4–5), and destroys any claim of injury.

i. The Evidence of The Account Creation Process Is Sufficient

Contrary to Plaintiffs' claims, Defendants are not required to submit the "exact webform" Plaintiffs encountered when signing up for a CVS Account. This is the case because "without any contradicting evidence about what the plaintiff saw, the court is not precluded from concluding as a matter of law that the plaintiff was on notice. . . when he created his account." *Robbins v. Mscripts, LLC*, No. 3:23-cv-01381, 2023 WL 5723220, at *5 (N.D. Cal. Sept. 5, 2023); *see McKee v. Audible, Inc.*, No. 2:17-cv-01941, 2017 WL 7388530, at *4 (C.D. Cal. Oct. 26, 2017) (a plaintiff must present "evidence that undermines the veracity of [the declarant's] testimony, or the authenticity of the flows"). Here, Plaintiffs apparently cannot present any such evidence, so they focus on the declaration's use of the word "similar." (Opp. at 13.) But describing the screenshot as "similar" to what Plaintiffs would have encountered is not fatal to the screenshot's evidentiary value. *See Hong v. StubHub, Inc.*, No. 2:24-cv-03318, 2024 WL 4720924, at *4 (C.D. Cal. Sept. 9, 2024) (allowing defendant to introduce a screenshot that was "substantially similar to what Plaintiff would have seen" and noting plaintiff's the failure of plaintiff to provide evidence to the contrary); *Maynez v. Walmart, Inc.*, 479 F. Supp. 3d 890, 896 (C.D. Cal. 2020) (rejecting plaintiff's relevance objections where defendant's declaration detailed a checkout process that closely mirrored the version in place when plaintiff encountered it). Plaintiffs' demand for the "exact webform" in order for this Court to consider this evidence is without merit.

ii. The Webform Is Adequate

The design and content of CVS's webform is sufficient to put Plaintiffs on notice of the

privacy policy and related disclosures. Plaintiffs attempt to portray the account creation page as browsewrap, (Opp. at 12), but the webform is better characterized as a sign-in wrap agreement, which "advises a user that by making some type of affirmative act, often by clicking a button, she is agreeing to the terms of service." *Moyer v. Chegg, Inc.*, No. 4:22-cv-09123, 2023 WL 4771181, at *4 (N.D. Cal. July 25, 2023). In *Lee v. Ticketmaster LLC*, for example, the Ninth Circuit analyzed whether a plaintiff validly assented to the terms of use "each time he clicked the 'Sign In' button when signing into his Ticketmaster account, where three lines below the button, the website displayed the phrase, 'By continuing past this page, you agree to our Terms of Use,' as well as each time he clicked the 'Place Order' button. . .where directly above the button, the website displayed the phrase, 'By clicking 'Place Order,' you agree to our Terms of Use,' where in both contexts, 'Terms of Use' was displayed in blue font and contained a hyperlink to Ticketmaster's Terms." 817 F. App'x 393, 394–95 (9th Cir. 2020). The Court found that, on these facts, users "affirmatively acknowledge the agreement before proceeding," and the "website contain[ed] an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound." *Id.*

Here, Plaintiffs similarly received notice of the hyperlinked privacy policy and manifested their assent by clicking the "Create your account" button. Specifically, the account creation page confirmed to Plaintiffs that "[b]y creating an account, you agree to the CVS. . .Privacy Policy. . . ." (Bowe Decl., Ex. B.) The relevant privacy policy appeared in immediate proximity to the disclosure, and was conspicuously set off from the remaining text, hyperlinked and in red font. (*Id.*) Importantly, Plaintiffs had the opportunity to review the disclosure and the privacy policy immediately above the call to action that reflected their agreement—hitting the "Create your account button." *Compare Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1157 (9th Cir. 2025) (disclosures regarding terms were below call to action) *with Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515–16 (9th Cir. 2023) (disclosure language was placed right above call to action) *and Lawrence v. Finicity Corp.*, No. 24-1737, 2025 WL 547375, at *2 (9th Cir. Feb. 19, 2025) (conspicuous notice on an uncluttered page with notice language not "buried but rather located directly on top of. . .the action button in reasonably sized black font") (internal quotation and citation omitted). Nor is this a situation in which Plaintiffs had to review disclosures across multiple screens to understand what

they were agreeing to. *Compare Chabolla*, 129 F.4th at 1159 (disclosures across multiple web pages that provided the user "the opportunity to 'Continue,' 'Continue,' 'Continue,' then 'Redeem now'" were insufficient to create a valid arbitration agreement) *with Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) (finding explicit notice on an uncluttered page and directly below call to action). Plaintiffs thus had sufficient notice of the privacy policy.

iii. Plaintiffs Fail to Demonstrate Inadequate Notice

Plaintiffs did not submit evidence in response, such as a declaration stating that they were not notified of or did not consent to the privacy policy, or that they did not create account on a screen substantially similar to the one depicted in Exhibit B to the Bowe Declaration. Instead, Plaintiffs contend that CVS failed to demonstrate Plaintiffs consented because CVS merely "made available" the privacy policy. (*See* Opp. at 12) (quoting *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1197 (S.D. Cal. 2024). Plaintiffs rely on cases in which the plaintiffs were not shown to have created accounts and consented to the terms. *See e.g., Cody v. Ring, LLC,* 718 F. Supp. 3d 993, 1000-01 (N.D. Cal. 2024) (Martínez-Olguín, J.) (holding neither express nor implied consent was obtained where the privacy policy was merely made available); *D'Angelo*, 726 F. Supp. 3d at 1197 (declining to find consent where website provided access to the privacy policy, but did not prompt users to review them). The other cases cited are likewise distinguishable because the plaintiffs in those cases came forward with evidence to dispute the provision of consent. *See Augustine v. Lenovo, Inc.*, No. 3:22-cv-02027, 2023 WL 4938050, at *2 (S.D. Cal. Aug. 2, 2023) (sustaining CIPA claim where consent turned on "multiple factual disputes such as whether Plaintiff viewed the privacy policy"); *Calhoun v. Google, LLC*, 113 F.4th 1141, 1151 (9th Cir. 2024) (finding factual dispute existed at summary judgment where it was unclear which policy applied). No such evidence exists here.

Instead, Plaintiffs take issue with certain design features of the account creation page, but these arguments are neither persuasive nor supported by caselaw in the Ninth Circuit. Sign-in wrap agreements are reasonably conspicuous where the notice is "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Oberstein*, 60 F.4th at 515 (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)). As the Ninth Circuit recently reiterated, the context of a transaction also plays a role in

whether a disclosure of terms is sufficiently conspicuous. *See Godun v. JustAnswer LLC*, 135 F.4th 699, 709 (9th Cir. 2025). This consideration also weighs in favor of enforcement as most consumers understand that they need to agree to terms when creating an account or using a mobile application.

Plaintiffs first challenge the webform, claiming the advisal language's lack of hyperlink and "small, gray font" fail to provide sufficient notice. (Opp. at 14.) But Plaintiffs do not cite to any authority that requires a hyperlink to appear in the advisal text itself. *Contra Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 928 (N.D. Cal. 2024) ("[T]he hyperlink appears on a screen that is simple and lacks clutter—*making the hyperlink more readily apparent*.") (emphasis added). Nor do Plaintiffs accurately describe the attributes of the webform. Here, the advisal text is black with a white background (not gray-on-gray), and the hyperlink to the privacy policy appears directly above in contrasting red font. Even assuming Plaintiffs' description was correct (it is not), many courts in this Circuit have found inquiry notice even where the notice language was a lighter or darker shade of the background. *See Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062, 1070, 1073–74 (C.D. Cal. July 20, 2023) (analyzing sign-up flows with grey font that other courts deemed sufficient for inquiry notice and rejecting argument that the "small, transparent gray font" was inconspicuous); *Peter v. Doordash, Inc.*, 445 F. Supp. 3d 580, 586 (N.D. Cal. Apr. 23, 2020) (finding that "despite Plaintiff's characterization of the font as gray-on-gray, the text contrasts clearly with the background and is plainly readable"). Under these same standards, the notice is conspicuous and clear.

Plaintiffs next argue that the advisal language fails to provide sufficient notice because "it is buried in a multi-line paragraph" that references marketing emails. (Opp. at 15.) Plaintiffs' characterization is inaccurate. Rather, the advisal language appears at the very beginning of the paragraph and is not "buried." (*See* Bowe Decl., Ex. B) ("By creating an account, you agree to the CVS Pharmacy's Terms of Use and Privacy Policy and to receive marketing emails about special CVS Pharmacy offers, new products, health information and more."). This advisal is unique from the notice paragraphs in Plaintiffs' citations. (*See* Opp. at 15) (citing *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *10 (N.D. Cal. July 31, 2023) (relevant advisal language was located towards the end of the paragraph); *Burzdak v. Universal Screen Arts, Inc.*, 2021 WL 3621830, at *6 (N.D. Cal. Aug. 16, 2021) ("[R]eference to the Terms of Use is buried in a relatively lengthy paragraph

*that largely focuses on and promotes free shipping and the VIP Insider program.*") (emphasis added); *Morrison v. Yippee Ent., Inc.*, 756 F. Supp. 3d 842, 850 (S.D. Cal. 2024) (weighing many features on the webpage to find no notice, including the eight-line notice paragraph, which started with the necessary advisal language but contained significantly more content in notice paragraph)). Plaintiffs' reliance on *Godun* is similarly inapposite, because the Court analyzed advisal language that was separated from the action button by a paragraph of unrelated text. 135 F.4th at 712.

Plaintiffs' contention that the single reference to marketing emails in advisal language impermissibly expands the notice language's scope also misses the mark. (*See* Opp. at 15–16.) In support of this argument, Plaintiffs claim that they did not know what they were agreeing to, and primarily rely upon *Herzog v. Superior Court*, 101 Cal. App. 5th 1280, 1298 (2024). In that case, the Court focused on both "the context of the transaction" for a prescription medical device "and the content of the text" on a setup page, which covered in detail the use of personal and medical information, to find that the plaintiffs were not on notice of the arbitration agreement when they checked the box agreeing to the terms of service. *Id.* at 1298. In contrast to *Herzog*, neither the context of the underlying transaction—Plaintiffs signing up for CVS.com Accounts—nor the content of the notice language warrants a finding that Plaintiffs did not understand, or were misled, as to the scope of the Privacy Policy when they clicked "Create my account."

Next, Plaintiffs contend that the advisal language is insufficient as it is "sandwiched between other larger elements[.]" (Opp. at 16.) This argument is unpersuasive, given that the language here appears directly above the "Create your account" button. *See, e.g.*, *Oberstein*, 60 F.4th at 516 (finding conspicuous notice where it is displayed directly above or below the action button).

Finally, Plaintiffs mischaracterize the Motion by arguing that CVS relies upon the CVS Pharmacy Notice of Privacy Practices to establish consent to the relevant practices. (Opp. at 17.) The privacy policy provided Plaintiffs with sufficient notice of how users' personal information was used and to whom it was disclosed. (Mot. at 7–9.) The disclosures available within the CVS Privacy Center merely provide an additional opportunity for notice. (Bowe Decl., Ex. I.)

*c. The Privacy Policy Disclosed the Activity at Issue*

The Motion details numerous disclosures of the conduct challenged by Plaintiffs in the

privacy policy. (Mot. 7–10, 13–14.) In response, Plaintiffs do not provide evidence that they did not create CVS.com Accounts or do not otherwise claim that they did not complete the flow presented. Instead, Plaintiffs contend that the privacy policy failed to disclose the activity, and may have conveyed the opposite impression. This contention is without merit, as described below.

The Ninth Circuit, in *Calhoun*, held that the district court can determine how a reasonable user would understand a privacy policy. *See* 113 F.4th at 1148–49. In *Smith v. Facebook, Inc.*, the Ninth Circuit affirmed that Facebook's terms, which stated that Facebook "collect[s] information when you visit or use third party websites and apps that use our Services" and that "[Facebook] use[s] all of the information we have about you to show you relevant ads" amounted to "[k]nowing authorization" and constituted consent for Facebook's practices of collecting its users' data from third-party sites and later using the data for advertising purposes. 745 F. App'x 8, 8–9 (9th Cir. 2018). Disregarding this binding precedent, Plaintiffs instead rely on *McCoy v. Alphabet, Inc.*, which analyzed a privacy policy for consent but found the language in that policy, unlike here, did not have the requisite specificity for dismissal at the motion to dismiss stage. No. 5:20-cv-05427, 2021 WL 405816, at *5–6 (N.D. Cal. Feb. 2, 2021) (emphasis added).

Here, the privacy policy at all relevant times disclosed that CVS collects "Personal Information" from its users, which means "information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, to you, and includes 'personal data' or similar terms as defined in applicable law", including, among others, (1) "Identifiers/demographic information, such as name, age, . . . postal and email address, phone number, and online identifiers, Internet Protocol ('IP') address, and other similar identifiers"; (2) "Commercial information, such as items purchased, obtained, or considered"; and (3) "*Sensitive Personal Information* as defined by applicable laws, including . . . *Personal Information collected and analyzed concerning a consumer's health*[.]" (Bowe Decl., Ex. J at 2–3) (emphasis added). The privacy policy informed Plaintiffs that CVS "may disclose Personal Information that we collect to . . . Our Service Providers. We disclose your Personal Information to our service providers that provide business, professional, or technical support services to us, help us operate our business and the Services, or administer activities on our behalf. We require our service providers to only use

your Personal Information in connection with providing services to CVS." (*Id.* at 5.)

A reasonable consumer would review the totality of this agreement to understand that CVS collects information about the consumer—including identifiers, products browsed and purchased, sensitive personal information, and health information—and discloses this personal information to service providers that provide support functions to CVS. *See Popa v. Harriet Carter Gifts, Inc.*, No. 2:19-cv-00450, 2025 WL 896938 (W.D. Pa. Mar. 24, 2025) (finding plaintiff consented under Pennsylvania's wiretapping statute under a reasonably prudent person standard, because the activity was disclosed in the Privacy Policy linked at the bottom of each page).

In an effort to avoid these disclosures, Plaintiffs point to a chart contained in the July 2023 privacy policy, (Bowe Decl., Ex. F at 7), which they claim gives "users the opposite impression: that their private health information was *not* being disclosed[.]" (Opp. at 2.) However, privacy policy sections must not be read in a vacuum. *See Hammerling v. Google, LLC*, No. 22-17024, 2024 WL 937247, at *2 (9th Cir. Mar. 5, 2024) ("The Privacy Policy, which applies to Google's entire 'range of services' used by 'millions of people daily,' must be read in context and construed as a whole.") This California-specific section informs users that it is a supplement to the privacy policy as a whole and is not a basis to disregard other clear disclosures. (Bowe Decl., Ex. F at 5.)

2. Irrespective of CVS's Disclosures, Plaintiffs Did Not Experience Any Injury

Plaintiffs argue that the alleged loss of control over their personal information establishes the requisite injury, and the purported "risks of future harm" serve to "compound the harm" allegedly suffered. (Opp. at 6.) Yet, Plaintiffs fail to meaningfully engage with CVS's arguments regarding their continued use of CVS's services, or their claims of speculative harm. Plaintiffs instead latch onto CVS's business associate agreement with QM, but as described below, this argument is misplaced and unpersuasive.

*a. Continued Interactions Demonstrate No Injury in the First Instance*

CVS demonstrated that Plaintiffs continued to use the CVS App, even after initiating this Action, but Plaintiffs misconstrue CVS's arguments and submit no evidence to the contrary. (Mot.

at 4–5, 12–13; *see generally* Opp.)[3] CVS contends that, if Plaintiffs were necessarily injured by the alleged disclosure of their personal information to a service provider in the first instance, then Plaintiffs would cease interacting with the CVS App after discovery of such an injury in order to prevent further harm. Plaintiffs' case law does not support a finding to the contrary. (*See* Opp. at 22) (citing *Rodriguez v. Google LLC*, No. 3:20-cv-04688, 2024 WL 38302, at *6–7 (N.D. Cal. Jan. 3, 2024) (involving a CDAFA claim); *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 589 (N.D. Cal. 2015) (involving claims seeking injunctive relief). The evidence that Plaintiffs did not cease interacting after discovery of the alleged injury undermines their allegations that they were injured in the first place and demonstrates that any injury that did occur is not redressable by this Court, another key component of standing.[4] *TransUnion v. Ramirez*, 594 U.S. 413, 423–24 (2021). This evidence also goes to the reasonable expectations of the prudent consumer. *Cf. Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102, 1113 (N.D. Cal. 2010) (observing in the context of a CLRA claim involving search histories, social security and financial account information that "[o]bviously, a reasonable consumer would have serious reservations about disclosing such sensitive data—or entering certain search queries—if he or she were aware that AOL, contrary to its privacy policy, would make such information readily available to the public, without the members' knowledge or consent).

*b. Speculative Future Harm Is Not a Sufficient Injury Under Article III*

Plaintiffs incorrectly assert that the "risks of future harm flowing from" the alleged disclosures "are sufficiently concrete" to support an injury in fact under Article III. (Opp. at 6.) However, speculative allegations of harm are not the same as a cognizable injury. (Mot. 15–16); *see Khamooshi v. Politico LLC*, No. 3:24-cv-07836, 2025 WL 1408896, at *6 (N.D. Cal. May 13, 2025) ("Plaintiffs have not alleged any facts indicating that the disclosed information could plausibly be used to commit fraud or otherwise cause harm.") (citing *I.C. v. Zynga, Inc.*, 600 F.

---

[3] CVS does not contend that continued interactions with the CVS App demonstrate a retroactive consent, nor that continued interaction alone demonstrate lack of Article III standing.

[4] This continued use is also indicative of the abuses of CIPA that have been noted in the process of the proposed amendment. Hrg. on Cal. S.B. 690 Before the Cal. Sen. Pub. Safety Comm. (Apr. 29, 2025) (Stmt. of Rep. Caballero) *available at* https://www.senate.ca.gov/media-archive (beginning at 6:52:52) ("Meanwhile, these abusive lawsuits do nothing to help consumer privacy. All they want is money; they're not asking for it to be fixed.").

Supp. 3d 1034, 1054 n.15 (N.D. Cal. 2022) (rejecting heightened risk of future harm argument where information disclosed could not plausibly be used to commit fraud)). Moreover, a threatened injury cannot be premised on a "highly attenuated chain of possibilities." *Zynga*, 600 F. Supp. 3d at 1052. Plaintiffs do not allege that their information was intentionally targeted or misused for purposes of identity theft or fraud; instead, they merely allege that they "may" be exposed to "identity theft, online scams, and other unwanted behavior." (*See* Opp. at 6) (quoting Compl. ¶ 61).

Plaintiffs criticize CVS's reliance on *Antman v. Uber Techs., Inc.*, No. 3:15-cv-01175, 2018 WL 2151231 (N.D. Cal. May 10, 2018) and *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220 (N.D. Cal. 2022). Yet, both cases stem from data breaches, which fundamentally involve a loss of personal information for an improper purpose. Thus, the explanations regarding future harm in both *Antman* and *Greenstein* are equally applicable in the instant matter, where data was allegedly disclosed without consent. These cases are more analogous than the authorities Plaintiffs cite, which involve false advertising claims and do not address the type of harm at issue here. (*See* Opp. at 6–7) (citing *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134 (9th Cir. 2024)*; Henning v. Luxury Brand Partners, LLC*, No. 3:22-cv-07011, 2023 WL 3555998 (N.D. Cal. May 11, 2023)).

*c. CVS's Use of QM Was Consistent with Applicable Law*

Plaintiff attempts to intertwine the merits of the case with the standing analysis by contending that QM is a third-party eavesdropper. (Opp. at 9–12.) Plaintiffs make this argument by asserting that an entity is a "third-party" eavesdropper where it has the capability to use the information at issue and further asserts that the BAA supports such an interpretation. (*Id.*) In support, Plaintiffs cite the allegations in the Complaint in which Plaintiffs allege QM had the capability to use Plaintiffs' information; however, the BAA[5] rebuts these allegations demonstrating that CVS and QM's contractual relationship limits QM's right to use any information obtained and CVS remained in control of the information at all times. Moreover, CVS's engagement of QM in

---

[5] CVS submitted only the BAA, which is an exhibit to a larger agreement between CVS and QM, to avoid filing unnecessary and irrelevant confidential information under seal. N.D. Cal. L.R. 79-5 ("A party must explore all reasonable alternatives to filing documents under seal, minimize the number of documents filed under seal, and avoid wherever possible sealing entire documents (as opposed to merely redacting the truly sensitive information in a document).").

this manner is consistent with both HIPAA and the CCPA.

Plaintiffs rely on *Tate v. VITAS Health Corporation*, in which the court held that the mere existence of a BAA—which was not attached to the motion nor were its contents explicitly described—was not enough to grant a Rule 12(b)(6) motion regarding the third-party's alleged capability to use the information. 762 F. Supp. 3d 949, 956 (E.D. Cal. 2025). While passing the capability test may be enough for a complaint to proceed on a 12(b)(6) challenge, it does not, on the record before this Court, rebut the clear evidence that QM was contractually limited in any use of PHI for its own purpose by CVS.[6] *See Doe v. Kaiser Found. Health Plan, Inc.*, No. 3:23-cv-02865, 2024 WL 1589982, at *16–18 (N.D. Cal. Apr. 11, 2024) (finding the Rule 12(b)(6) "capability test" and the "use test" are not inconsistent in that they both address the extent of control and ability to limit the dissemination of data and disagreeing "that a third party should *per se* be considered an eavesdropper—*i.e.*, even if hired by a party to the communication to do work solely for the party's benefit and with strict limits on the ability of the third party to use the information for any other purpose"). Plaintiff's reliance on *Ambriz v. Google, LLC*, No. 3:23-cv-05437, 2025 WL 830450 (N.D. Cal. Feb. 10, 2025) is similarly inapposite because that case did not address the same issues raised here: conduct that was in compliance with two heavily-regulated statutory frameworks—the HIPAA and the CCPA. Therefore, the BAA does not contradict that QM is not capable of using any information obtained through the relationship and does not "cement that QM is a third-party eavesdropper who intercepted Plaintiffs' private medical information."

## III. <u>CONCLUSION</u>

For the foregoing reasons, CVS respectfully requests that this Court grant the Motion.

DATED: June 17, 2025

Respectfully submitted,

By: */s/ Whitney M. Smith*

Whitney M. Smith (*pro hac vice*)

---

[6] CIPA's injury requirement stems from Section 637.2 which covers violations of any section of CIPA. CVS need not address the individual elements of a Section 632 claim on a 12(b)(1) motion addressing Plaintiffs' lack of injury and standing to sue under any CIPA section. (Opp. at 8–9.)

**KELLEY DRYE & WARREN LLP**
Lauri A. Mazzuchetti (*pro hac vice* forthcoming)
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Telephone: (973) 503-5900
Facsimile: (973) 503-5950
wsmith@kelleydrye.com
lmazzuchetti@kelleydrye.com

**KELLEY DRYE & WARREN LLP**
Rebecca B. Durrant (SBN 350444)
888 Prospect Street, Suite 200
La Jolla, CA 92037
Telephone: (212) 808-7551
Facsimile: (213) 547-4901
rdurrant@kelleydrye.com

*Counsel for CVS Health Corporation and CVS Pharmacy, Inc.*